Laszlo Toth, Appellant *v.* City of Allentown Zoning Hearing Board and Harry C. Weil, III and Loretta L. Weil, Appellees.

Argued September 10, 1985, before Judges ROGERS and PALLADINO, and Senior Judge BLATT, sitting as a panel of three.

*Ronald L. Clever,* with him, *Thomas F. Traud, Jr., Roberts, Traud & Corkery,* for appellant.

*Robert W. Brown,* with him, *Margo S. Wiener, Brown, Brown, Solt, Wiener & Krouse,* for intervenor/appellees, Harry C. Weil, III and Loretta L. Weil.

OPINION BY JUDGE ROGERS, November 7, 1985:

Laszlo Toth (appellant) has appealed from an order of the Court of Common Pleas of Lehigh County upholding the grant by the Zoning Hearing Board of the City of Allentown (board) of a variance to Harry C. Weil, III, and Loretta L. Weil (Weils) to enlarge a garage building which is nonconforming by reason of an inadequate set back and to use the garage for automobile repairs, a prohibited use in the city's R-M medium density residential zoning district.

The Weils' irregularly shaped three-quarters of an acre lot seems to have been located in a residential district since the first Allentown Zoning Ordinance was adopted possibly in the 1940's. The garage was constructed in 1957 for use as an automobile club. This use and its later use as a carpenter shop were allowed by the city's zoning authorities. The garage was also

at one time used as a welding shop, whether with or without official permission not being revealed.

The Weils purchased the property in 1970 and, without official permission, began to rent to others as an automobile body shop. In 1974, the Weils began themselves to use the garage for automobile body repairs. They sought a variance in 1974, which was refused; but they continued to use the garage as a body repair shop. From 1974 through 1983 they tried without success to sell the property. The present application for a variance to conduct an engine repair, not body repair, shop and to enlarge the garage building was made in October, 1983.

At the board hearing, the Weils produced the testimony of a real estate broker who described his unavailing efforts during nine years to sell the property. The broker testified that he placed ninety advertisements for the property, that he spent over $500 for advertising, that he first listed the property for $35,-000 and then reduced it to $25,000, and that no one made an offer for the property to be used as zoned. He further testified that no one was interested in the property because it was "an alley-type property" and had no water or sewer. The broker explained that it would be "totally unfeasible to erect anything of value" on the property since "you probably would never have a resale if you chose to do this," and stated that in his opinion, "the only use ... would be the present use [as an automobile repair shop.]"

The board pertinently found that the lot could not be sold because it was bounded by alleys, not streets, had no water or sewer, and faced rear yard garages on two sides. The board further found that the lot was not suitable for residential purposes. In discussion, the board concluded that unnecessary hardship would be caused the Weils without a variance from the terms

of the ordinance and that the proposed use would not adversely affect the public safety, welfare or interest. The board also wrote that:

Many strong concerted efforts by an experienced real estate broker in the city have resulted in the finding of no buyers or tenants, despite numerous newspaper advertisements, signs, telephone solicitations, and a major reduction in the asking price. The testimony is clear, therefore, that this property cannot be used for residential purposes.

The board approved the application for variances subject to conditions, notably that the hours of operation should be from 8 a.m. to 6 p.m., that a seven foot high fence should be erected, that access by automobile should be from only one of the abutting public ways, that no signs should be erected, and that the activity should be engine repair only—specifically excluding body work and automobile painting. The court of common pleas, which received no evidence, affirmed the board's decision.

The uses permitted in the R-M medium density residential district are:

1. Single-family detached dwellings in which not more than three (3) other persons may be fed or sheltered for profit as boarders or roomers.

2. Two-family or duplex dwellings, twin duplex, semi-detached or twin dwellings in which not more than three (3) other persons are fed or sheltered for profit in each dwelling unit.

3. Churches and related residential uses.

4. Public parks or playgrounds or governmental uses.

5. Public utility distribution lines.

6. The growing of fruits, vegetables, flowers, trees and shrubs.

7. Accessory uses on the same lot and customarily incidental to the permitted use.

The appellant, a neighbor, points to 6, and contends:

without having received any evidence regarding the feasibility of using the property for an expressly permitted use that does not depend upon building—that is, without any evidence on whether the property can be used for growing fruits, vegetables, flowers, trees, or shrubs—the Zoning Hearing Board was not legally in any position to decide that the zoning ordinance in question inflicted a hardship on the owners of the property, and was therefore legally required to deny the application, or to demand additional evidence.

The Weils counter by noting that the appellant did not raise this issue before the board or the court of common pleas. The law is that matters not raised in the court below cannot be raised for the first time on appeal. *Wynnewood Civic Association v. Lower Merion Township Board of Adjustment,* 406 Pa. 413, 179 A.2d 649 (1962). The appellant appeared at, but did not participate in, the board hearing. In his brief in common pleas court, he argued only that the automobile repairs were not a permitted use in the R-M district and that the appellant's hardship was self-inflicted. The issue sought to be raised—that the Weils had failed to prove that the property could not be marketed as a fruit and flower garden—was not presented to the board or court. It was therefore waived. More important, the argument is baseless on the merits. The Weils' real estate expert, whose testimony was accepted by the board, testified that

there was no market for the property for any use except as an automotive garage. Any use would include residences, churches, public utility lines *and* the growing of fruits, vegetables, flowers, trees and shrubs, all permitted by the ordinance.

Order affirmed.

ORDER

AND Now, this 7th day of November, 1985, the order of the Court of Common Pleas of Lehigh County in the above-captioned matter is affirmed.